# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| REBECCA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-0931-CV-W-GAF-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Rebecca Smith ("Smith") filed two applications under the Social Security Act ("the Act"). The applications sought, respectively, disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 402, *et seq.*, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*

Smith's two applications were denied initially. Thereafter, Smith sought *de novo* administrative review and, on February 26, 2009, following an evidentiary hearing, an administrative law judge ("ALJ"), issued a written decision in which he found that Smith was not under a "disability." Subsequently, on September 4, 2009, the Appeals Council of the Social Security Administration denied Smith's request for additional administrative review of the ALJ's decision. Thus, the February 26, 2009 decision of the ALJ stands as the final decision of the Commissioner, subject to judicial review.

The ALJ determined that Smith had severe impairments of obesity and degenerative disc disease of the lumbar spine. The ALJ, however, found that Smith's mental impairments were not severe. Thereafter, the ALJ formulated a residual functional capacity ("RFC") for Smith and concluded that Smith, even taking into account her impairments, could perform a limited range of

light work. After finding that Smith could not perform any past relevant work, the ALJ, relying on the testimony of the vocational expert, concluded that Smith could perform other work that existed in significant numbers in the national economy. Thus, the ALJ found that Smith was not disabled.

The standard of review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusion. *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Finch*, 547 F.3d at 935 (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)). A reviewing court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted). The Eighth Circuit has further noted that a reviewing court should "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

To establish entitlement to benefits, Smith must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 20 C.F.R. §§ 404.1505, 416.905. The Supreme Court in *Barnhart v. Walton*, 535 U.S. 212, 218-20, 122 S.Ct. 1265, 1270 (2002), upheld the

2

Commissioner's interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for 12 months.

The ALJ denied Smith disability insurance benefits under Title II of the Act due to the lack of evidence.[1] For entitlement to benefits under Title II, Smith had the burden of showing that she was disabled as defined by the Act prior to the expiration of her insured status on December 31, 1999. *Pyland v. Apfel*, 149 F.3d 873, 876-77 (8th Cir. 1998); 42 U.S.C. 416(i)(3); 20 C.F.R. § 404.130. A nondisabling condition which later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits under Title II. *Thomas v. Sullivan*, 928 F.2d 255, 260-61 (8th Cir. 1991). It is not enough that the impairments existed before the date a claimant's insured status expired; the impairments must have been disabling at that time. *Lopez v. Bowen*, 806 F.2d 632, 633 (5th Cir. 1986); 20 C.F.R. § 404.131(a). Thus, the relevant period for consideration of Smith's Title II application was July 14, 1999 through December 31, 1999.

At the evidentiary hearing, however, Smith failed to provide any medical evidence prior to 2007. Consequently, the ALJ properly denied Smith's Title II claim for a complete lack of evidence. 20 C.F.R. § 404.1512. Smith's Title XVI claim, thus, is the only remaining issue on appeal.[2]

Smith argues that the ALJ should have found her mental problems severe. Based on the limited mental health evidence in the medical evidence of record, however, the ALJ did not err in finding Smith's mental problems non-severe. Smith's mental problems appeared to be situational,

---

[1]Smith does not directly dispute the ALJ's denial of benefits under Title II.

[2]Upon review of the record and the law, the Defendant's position is found to be persuasive. Much of the Defendant's brief is adopted without quotation designated.

3

and the medical evidence of record failed to document ongoing mental health problems for 12 months or more. *Barnhart v. Walton*, 535 U.S. 212, 218-20, 122 S.Ct. 1265, 1270 (2002).

An impairment is non-severe when it "does not significantly limit" a person's "physical or mental ability to do basic work activities," which means it has "no more than a minimal effect" on a person's ability to work even if one considered that person's age, education, or work experience. 20 C.F.R. § 416.921(a); SSR 85-28. The regulations define "basic work activities" as those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). The claimant has the burden of proving that her impairment or combination of impairments is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

Smith first claims that the ALJ's finding that she had no severe mental impairment is flawed because the ALJ failed to consider her treatment for depression. In fact, the ALJ specifically noted that Smith began taking antidepressant medication for "depression secondary to the death of a grandchild and her husband" in May 2008. The ALJ indicated that the nurse who prescribed the medication did not mention that Smith had any difficulties with depression at the next appointment in June 2008. The one appointment in May 2008 is not enough evidence to establish a severe mental impairment. As the ALJ indicated, Smith's depression appeared to be situational and related to grief over the deaths of family members. *Compare Dunahoo v. Apfel*, 241 F.3d 1033, 1039-1040 (8th Cir. 2001). The ALJ considered the evidence related to Smith's depression.

Smith also contends that the ALJ improperly found that her failure to seek further specialized mental health treatment indicated that she had no severe mental impairment. Smith's failure to seek further treatment was relevant, however, because she likely would have continued to complain of mental health problems to providers if her condition has not improved. *Edwards v. Barnhart*, 314

4

F.3d 964, 967 (8th Cir. 2003). Smith did not just fail to seek specialized mental health treatment, she failed to seek any treatment for mental health problems for much of the relevant time period. The treatment she did seek did not reveal serious symptoms, such as suicidal ideation. For example, in June 2007, mental health staff noted that Smith's presentation, speech, emotions, thought process, thought content, and somatic factors were all within normal limits except for insomnia. Substantial evidence supports the ALJ's finding that Smith had no severe mental impairment.

Smith next argues that the ALJ failed to apply the psychiatric review technique in analyzing her mental problems. The record does not support this contention. In the psychiatric review technique, the ALJ rates the claimant's mental problems in the areas of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)-(d). Here, the ALJ specifically noted that Smith had "mild limitation in activities of daily living, mild limitation in social functioning; mild limitation in concentration, persistence, or pace; and no periods of decompensation of extended duration." The ALJ discussed the relevant evidence concerning Smith's mental health. Contrary to Smith's assertion, the ALJ performed the psychiatric review technique analysis.

Smith further claims that the ALJ failed to consider her depression at later steps in the sequential evaluation process, but in the RFC assessment the ALJ limited Smith to unskilled work, a significant restriction that would account for non-severe mental problems. In any event, the ALJ had no need to include restrictions in the RFC assessment based on Smith's depression because Smith provided so little evidence concerning her depression. Substantial evidence supports the ALJ's analysis of Smith's mental problems.

5

Smith contends that the ALJ failed to provide support for his finding that her allegations were not credible. In this regard, the ALJ pointed to several factors that detracted from the credibility of Smith's subjective allegations. These factors included inconsistencies with the medical evidence, Smith's failure to seek treatment, her work history, and her daily activities.

Credibility questions concerning Smith's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). To analyze a claimant's subjective complaints of pain, the ALJ must consider the entire record including the medical records, third party and claimant's statements, as well as such factors as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. 20 C.F.R. § 416.929; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for this finding, the court usually will defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (citation omitted).

The ALJ considered the medical evidence of record in evaluating the credibility of Smith's subjective allegations. The ALJ determined Smith had severe obesity and degenerative disc disease of the lumbar spine. He discussed and analyzed the medical evidence of record at length.

Smith's allegations of disabling back pain were inconsistent with the medical evidence of record. The first medical record related to back pain is dated April 9, 2007, almost eight years after Smith's alleged onset date. In June 2007, a nurse noted that Smith was not taking any medication for her back pain. 20 C.F.R. § 416.929; *Clevenger v. Astrue*, 567 F.3d 971, 976 (8th Cir. 2009). Smith reported significant improvement in her back pain after undergoing epidural steroid injections

6

in June and July 2007. On July 12, 2007, Dr. Charapata noted that Smith had made "significant improvement" since the first injection, and Smith reported she was "at least 50% improved."

About two weeks later, Dr. Charapata noted Smith had "made 40% improvement." At the consultative examination in July 2007, Dr. Wheeler noted that Smith had not been "able to relate any change in activity or symptoms which resulted in pursuit of this recent medical care." Dr. Wheeler indicated that Smith's range of motion in her back was "preserved despite subjective pain." The medical evidence of record contains no further treatment for back pain after Smith's last appointment with Dr. Charapata in July 2007. The medical evidence of record fails to support Smith's allegations of disabling back pain.

Smith's failure to seek treatment for her back pain and mental health problems detracted from the credibility of her subjective allegations. *Edwards*, 314 F.3d at 967. As discussed above, Smith's treatment record is limited. The medical evidence of record shows that Smith's treatment for back pain lasted only a few months, and her treatment for mental problems consisted of only three appointments. Smith is responsible for providing evidence showing she is disabled. 20 C.F.R. § 416.912.

Smith's work history further detracted from the credibility of her subjective allegations. 20 C.F.R. § 416.929(c)(3). Her earnings record revealed low earnings in almost all years and no earnings in other years. The ALJ considered this work record in the credibility assessment. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

Smith engaged in daily activities inconsistent with her allegations of disability. 20 C.F.R. § 416.929(c)(3); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). In her function report, Smith reported cleaning kitchen floors, doing laundry and dishes, cooking, and driving. Smith testified that

she helped care for her grandchild. *Brown v. Barnhart*, 390 F.3d 535, 541 (8th Cir. 2004). In addition, Smith reported spending "part of her day" pushing her mother in a wheelchair. Smith's daily activities detracted from the credibility of her subjective allegations.

Smith argues that her daily activities are consistent with sedentary work restrictions and that, based on the Medical-Vocational Guidelines ("the grids"), she would be disabled if limited to sedentary work. As the ALJ pointed out, Smith has ranged from a "younger" individual under the grids to an individual "closely approaching advanced age." If Smith were limited to sedentary work, the grids would direct a finding of "disabled" only during the time period when Smith was an individual "closely approaching advanced age." 20 C.F.R. § 404, Subpt. P, App. 2. Smith became an individual "closely approaching advanced age" in 2006. As discussed above, in her May 2007 function report, Smith reported engaging in a wide range of housekeeping activities. Smith's ability to push her mother in a wheelchair for part of the day suggests that she can perform work at the light exertional level or greater. The ALJ did not err in finding that Smith's daily activities detracted from the credibility of her subjective allegations.

The ALJ explicitly found that Smith's allegations were not credible. The ALJ also outlined "good reasons" for this determination. *Casey*, 503 F.3d at 696 (citing *Gregg*, 354 F.3d at 714). The ALJ correctly found that inconsistencies with the medical evidence, Smith's failure to seek treatment, her work history, and her daily activities all constituted good reasons for doubting the credibility of Smith's subjective allegations.

Smith next argues that the ALJ improperly relied on the opinion of the consultative examiner, Dr. Wheeler, and failed to specify the weight he gave to Dr. Wheeler's opinion. Where, as here, the ALJ's RFC assessment is consistent with a medical opinion, there is little need for the

8

ALJ to explicitly state the weight he gave to the opinion. *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weight evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."). The ALJ discussed Dr. Wheeler's consultative examination in detail and there was no contrary medical opinion. Dr. Wheeler's opinion provided significant support for the ALJ's RFC assessment.

Smith contends that the ALJ should have addressed the possibility that Dr. Wheeler may not have had access to the May 2007 magnetic resonance imaging ("MRI") report and other medical evidence. There was no need for the ALJ to address this possibility, however, because Dr. Wheeler indicated that her examination itself revealed "minimal objective findings," and the ALJ relied on this report. Even if Dr. Wheeler did not have access to the MRI report, she conducted a thorough examination of Smith. The ALJ properly relied on Dr. Wheeler's findings.

Smith argues that because Dr. Wheeler examined her only one time, her opinion cannot constitute substantial evidence supporting the ALJ's decision. Dr. Wheeler's opinion, however, was consistent with the record as a whole, which showed that Smith sought treatment for back pain for only a brief period of time and improved significantly with that treatment. The ALJ properly considered Dr. Wheeler's opinion. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). Substantial evidence supports the ALJ's analysis of Dr. Wheeler's findings.

When posed with the ALJ's RFC findings in a hypothetical question, the vocational expert responded that such a person could perform the light, unskilled jobs of folding machine operator, electrical assembler, and price marker. The question was properly formulated, so the expert's testimony that Smith could perform other work constitutes substantial evidence supporting the Commissioner's decision. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996).

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

                                                                          <u>s/ Gary A. Fenner</u>
                                                                          Gary A. Fenner, Judge
                                                                          United States District Court

DATED: August 25, 2010